UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CLAUDE R. FRAZIER,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>1:10-CV-00603 |
| VERSUS | |
| TIM WILKINSON, et al.,<br>    Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Claude R. Frazier ("Frazier") on April 9, 2010 and amended on August 2, 2010 (Doc. 6). The named defendants are Tim Wilkinson (warden of Winn Correctional Center ("WCC")), Dr. Pacheco (a physician formerly employed at WCC), and Pat Thomas (medical director at WCC). Frazier contends that he is a paraplegic and that, on about May 29, 2009, while he was incarcerated at WCC, he fell out of the shower chair in the shower and injured his neck and shoulder, and that he was subsequently denied appropriate medical care. For relief, Frazier asks for a proper shower chair, medical care, and monetary damages.

The defendants answered the complaint, asked for a jury trial

(Docs. 13, 15), and filed a motion for summary judgment (Doc. 20). Frazier filed a cross-motion for summary judgment (Doc. 22), to which defendants filed an response (Doc. 24). Frazier contends he has exhausted his administrative remedies.

The parties' cross-motions for summary judgment are now before the court for disposition.

## Law and Analysis

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

2

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

Medical Care Claim/Dr. Pacheco

Frazier contends he was denied appropriate medical care and a proper shower chair by defendants. Frazier specifically alleges in his complaint that he fell out of his shower chair on about May 29,

3

2009. Frazier contends his neck and shoulder began hurting and he began getting headaches after he fell, so he went to the infirmary and the nurse gave him a "pain medication." On June 2, 2009, Frazier told Warden Wilkinson he had fallen in the shower and was hurting, so Warden Wilkinson sent him to the infirmary, where he filled out a sick call request to see the doctor. Dr. Pacheco examined Frazier on June 3 or 4, 2009; Frazier claims Dr. Pacheco did not examine him properly and refused to do anything for him, so he filed a grievance.

Frazier further contends in his complaint that, on June 29, 2009, Dr. Pacheco again saw Frazier, told Frazier he had bruised muscles in his neck and shoulder, and gave him some "pain cream." Frazier asked to go to the hospital for x-rays, but Dr. Pacheco did not send him. On July 9, 2009, Dr. Pacheco saw Frazier and said his neck was doing fine and he needed to "work on it." On July 14, 2009, Frazier was told he was on the list to be x-rayed, but that was never done. Frazier contends that, as of April 7, 2010, he still has pain in his neck and shoulder and he has not had x-rays. Frazier contends he has been prescribed Percogesic, which is "Tylenol with a decongestant" and, therefore, not a valid treatment.

1.

Defendants show in Frazier's medical records that, on May 28, 2009, the medical staff was called to evaluate Frazier, who had

4

been taking a shower when his chair slid out from under him, causing him to fall and hit his head on the wall (Doc. 25, p. 34/49). It was noted that Frazier was paralyzed from the chest down and used a wheel chair, and that he was complaining of a minimal headache at that time (Doc. 25, p. 34/49). Pursuant to a follow-up conversation with a health services worker, the medical clinic agreed to purchase a shower chair with arms for Frazier to us (Doc. 25, p. 35/49). The next day, Frazier apparently did not report a headache or neck or shoulder pain in the medical clinic (Doc. 25, p. 37/49).

Frazier made a sick call request on June 15, 2009 (Doc. 25, p. 30/49) and on June 18, 2009, Frazier was seen by the LPN in the infirmary for neck and left shoulder pain for one month after he fell in the shower; it was noted that Frazier had not made any prior sick calls or medical emergencies for that complaint and he was referred to Dr. Pacheco for an appointment (Doc. 25, p. 29/49). On June 19, 2009, Frazier made a written request to the warden for medical care due to injuries from his fall in the shower on May 28, and he was advised to fill to a sick call form (Doc. 25, p. 28/49). On June 20, 2009, Frazier complained at the infirmary of left shoulder pain after a fall three weeks before; Frazier's neck was supple, but he had tenderness at the left suprascapular area, and

5

Dr. Pacheco prescribed NSAIDs[1] for pain (Doc. 25, p. 17/49). On June 26, 2009, Frazier complained of neck and left shoulder pain that began May 28, 2009; Frazier was able to turn his head slowly to left and right, but had pain when holding his head down or to the left (Doc. 25, p. 25/49).

On June 29, 2009, Frazier had purulent drainage from his left elbow, decreased range of motion in his neck, and tenderness in the left side of his neck (Doc. 25, p. 17/49). Frazier was diagnosed with a neck sprain and infected lesion on his left elbow, and prescribed analgesics and analgesic balm, and educated on neck exercises (Doc. 25, p. 17/49).

On July 9, 2009, Frazier was seen for a follow-up on his complaints of neck pain following trauma; Frazier had a full range of motion in his neck and left arm, with no swelling (Doc. 25, p. 14/49). It was noted that Frazier was already taking percogesic (which contains acetaminophen[2]) (Doc. 25, Tr. p. 14/49). However, on July 12, 2009, Frazier complained he had never received any

---

[1] NSAIDs are non-steroidal anti-inflammatory drugs, such as ibuprofen. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: NSAID, available at http://www.merriam-webster.com/medlineplus/nsaid (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[2] Percogesic is a combination of Acetaminophen and Phenyltoloxamine (an antihistamine). MEDLINEplus Health Information, Drug Information: Percogesic, available at medlineplus/druginfo/drug_Pa.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

pills for pain (Doc. 25, p. 27/49).

On August 12, 2009, Frazier was scheduled to see Dr. Pacheco to determine whether he needed an x-ray of his neck and left shoulder (Doc. 25, pp. 7/49, 13/49). On August 14, 2009, Frazier had good hand strength, his neck was supple, and there were no masses in his shoulder, but his x-rays were not yet in; Frazier was diagnosed with musculoskeletal pain and prescribed analgesics (Doc. 25, p. 13/49). In September 2009 and April 2010, Frazier was prescribed Baclofen (for muscle spasms and pain)[3] (Doc. 25, pp. 46/49, 48/49); although Frazier complains about the verbal orders, a "verbal order" from Dr. Pacheco to the medical staff was the same as a written order. In February 2010, Frazier was prescribed Ibuprofen 600 mg as well as Percogesic (Doc. 25, pp. 46/49-47/49).

On June 1, 2010, Frazier made a sick call request (Doc. 25, p. 40/49); on June 4, 2010 Frazier continued to complain of headache and neck and left shoulder pain due to his fall in May 2009 (Doc. 25, p. 38/49-39/49). On June 8, 2010, Dr. Cleveland, who replaced Dr. Pacheco, prescribed Naproxen and Flexeril for Frazier (Doc. 25, p. 45/49).

2.

Under the Eighth Amendment, a lack of proper inmate medical

---

[3] See MEDLINEplus Health Information, Drug Information: Baclofen, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682530.html /nsaid (a service of the U.S. National Library of Medicine and the National Institutes of Health).

7

care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980 (1994).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

Frazier's main complaint appears to be that he was not sent to a hospital for x-rays by Dr. Pacheco. Although Frazier has been treated with pain medication and given exercises to do, he

complains that he is still in pain; Dr. Pacheco was replaced at WCC and it is noted that the new doctor also has not sent Frazier to a hospital for x-rays. This claim amounts to nothing more than a disagreement as to the type of treatment Frazier received. See Hickman v. Moya, 181 F.3d 97 (5th Cir. 1999)(prison doctor's refusal to send plaintiff to specialist was disagreement over medical care or, at most, negligence). Inmates are entitled to reasonable medical care, not to the best medical care that money can buy. Mayweather v. Foti, 953 F.2d 91 (5th Cir. 1992).

Likewise, Frazier contends the Percogesic (which contains acetaminophen) he was initially given for his pain was inappropriate. Again, that is only a disagreement about the type of medical treatment he received. Later, Dr. Pacheco prescribed NSAIDs, and there are records of treatment by Dr. Pacheco through June 2010. Frazier has not shown that Dr. Pacheco or anyone else has been deliberately indifferent to his serious medical needs. Therefore, Frazier has not stated a claim for violation of his Eighth Amendment right to medical care.

Finally, Frazier contends the shower chair does not have skid-proof feet on it. However, Frazier raises this claim for the first time in his motion for summary judgment; he did not raise this claim in his original or amended complaints. Frazier makes only a cursory allegation that his shower chair does not have skid-proof feet and has not alleged any facts or evidence to show deliberate

9

indifference by any of the named defendants. Therefore, Frazier has not stated a claim for violation of his constitutional rights by defendants in this respect.

Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment should be granted on Frazier's denial of medical care claims and in favor of Dr. Pacheco, and Frazier's motion for summary judgment should be denied.

<u>Warden Wilkinson/Pat Thomas</u>

Frazier also contends Warden Wilkinson and Medical Director Pat Thomas are liable to him for denial of medical care. However, Frazier has not shown they had any involvement in his medical care, and he has not shown that he was denied medical care.

Frazier apparently named Wilkinson and Thomas as defendants in this case in their supervisory capacities, since he has not made any specific factual allegations which involve them. Frazier only alleged that he complained about his accident and injury to Wilkinson, who told him to go to the infirmary and make a sick call request. Likewise, as to Thomas, Frazier alleges only that he complained about his medical care to Thomas, who responded that he had received adequate medical care. Frazier has not alleged that either Wilkinson or Thomas actively participated in Frazier's medical care.

The doctrine of respondeat superior, which makes an employer

10

or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); Thompkins, 828 F.2d at 303.

Frazier has not alleged or offered any proof of any acts or omissions of Wilkinson or Thomas, or any unconstitutional policies implemented by Wilkinson or Thomas, which have deprived Frazier of his constitutional rights. Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment should be granted in favor of Wilkinson and Thomas, and Frazier's motion for summary judgment should be denied.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment be GRANTED, Frazier's motion for summary judgment be DENIED, and Frazier's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 20th day of October, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE